HENDRY, Judge.
Appellant-plaintiff, as Trustee in Bankruptcy for South Florida Auto Auction, Inc., brought an action in three counts against appellee banks alleging: (1) breach of an oral contract by Curtiss Bank [now known as First National Bank of Miami Springs]; (2) malicious interference with an advantageous business relationship [1] by and against First National Bank of Miami; and (3) the taking of an unlawful preference by Curtiss Bank within four months of appellant’s petition in Bankruptcy. In 72-694, appellant seeks review of the trial court’s action in directing a verdict in favor of appellees as to counts one and two above. Count three was submitted to the jury who returned a verdict for appellee Curtiss Bank and appellant also seeks review of a final judgment entered in accordance therewith, as well as certain other rulings of the trial court made prior to and during trial. In 72-1409 [consolidated here for appellate purposes] appellant seeks review of the post-judgment order of the trial judge correcting a portion of the transcript of testimony. We affirm.
The alleged oral contract between the bankrupt’s President, Mr. Cranson, and the then President of Curtiss Bank, Mr. Lead *531 er, provided for the Bankrupt to open two accounts with Curtiss Bank; a “Sales Day” and “Regular” account, where for a service charge[2] Cranson was permitted to deposit unpaid drafts on the sale of used cars at auction and was given immediate cash credit on the drafts despite the fact that they had not cleared the banks upon which they had been written. Thus, Cran-son was able to immediately write checks on the deposits without waiting for the deposits to clear. If any of the drafts did not clear, the amounts were to be considered as a non-interest bearing floating loan for these amounts.
The arrangement existed for some six months when management of Curtiss Bank changed hands.[3] The new management, upon being presented with some $10,000.00 in checks written by Cranson on an account with a balance of $8.00, dishonored the checks due to insufficient funds without prior notice to the Bankrupt. At that time, Bankrupt’s credit balance of uncleared drafts was $136,816.00. Curtiss Bank, thereupon, called in various notes owed by Cranson and applied the proceeds of incoming drafts to the payment of the notes.[4] Subsequently, and within four months of these acts, the debtor filed for bankruptcy.
We have carefully considered all the points raised by appellant and have found them to be without merit and without need for comment, save one.
Appellant contends error on behalf of the trial judge in directing a verdict for appellee Curtiss Bank on the first count of its complaint for breach of the oral agreement aforementioned. We have carefully considered the record, briefs and arguments of counsel in this regard and are of the opinion that the action of the trial judge was eminently correct on this issue.
From the record, there does not appear sufficient evidence concerning this arrangement to allow the issue to go to the jury. The only testimony as to the terms of the arrangement was by the then President of the Curtiss Bank who stated that his understanding of the agreement was that the credit amount of drafts not cleared would be either “a little ahead or a little behind” the clearing of the deposits. Moreover, the testimony reflected Mr. Leader’s belief that the arrangement could be terminated at any time if it became too “risky” for the Bank.
We must note, in addition, that the amount of credit extended to the Bankrupt by this system exceeded the legal loan limit for the Bank under Federal law.[5] We do not feel, therefore, that there was any obligation on behalf of the new management to continue this alleged course of conduct, directly contrary to Federal banking law at the risk of their own personal liability.
Therefore, for the reasons stated, the orders and judgment appealed from are hereby affirmed.
Affirmed.

. The relationship allegedly interfered with was the alleged oral contract referred to in Count I.

. Initially, 500 per item and later raised to 750 per item.

. New management consisted of Mr. Broad who acquired the services of a Mr. Hughes on loan from First National Bank of Miami. These acts of Mr. Hughes were allegedly imputed to First National Bank of Miami and formed the basis for Count II of the complaint.

. These acts formed the basis for Count III to recover the preferential payments taken by the Bank.

. See, 12 U.S.C.A. § 84.